<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2352**

JENNIFER WORKMAN, individually and as guardian of M.W., a minor; M.W., a minor,

          Plaintiffs - Appellants,

          v.

MINGO COUNTY BOARD OF EDUCATION; DR. STEVEN L. PAINE, State Superintendent of Schools; DWIGHT DIALS, Superintendent Mingo County Schools; WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES,

          Defendants – Appellees,

          and

MINGO COUNTY SCHOOLS; STATE OF WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES,

          Defendants,

          v.

MARTHA YEAGER WALKER, in her capacity as Secretary of the West Virginia Department of Health and Human Resources; DR. CATHERINE C. SLEMP, in her capacity as State Health Director for the West Virginia Department of Health and Human Resources,

          Third Party Defendants – Appellees.

---------------------------------------

CHILDREN'S HEALTHCARE IS A LEGAL DUTY, INCORPORATED; AMERICAN ACADEMY OF PEDIATRICS, INCORPORATED, West Virginia Chapter; CENTER FOR RURAL HEALTH DEVELOPMENT, INCORPORATED;

WEST VIRGINIA ASSOCIATION OF LOCAL HEALTH DEPARTMENTS; IMMUNIZATION ACTION COALITION, INCORPORATED,

Amici Supporting Appellees.

---

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, Chief District Judge. (2:09-cv-00325)

---

Argued: December 9, 2010                    Decided: March 22, 2011

---

Before AGEE and WYNN, Circuit Judges, and Patrick Michael DUFFY, Senior United States District Judge for the District of South Carolina, sitting by designation.

---

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Agee and Senior Judge Duffy concurred.

---

**ARGUED:** Patricia Ann Finn, PATRICIA FINN, ATTORNEY, PC, Piermont, New York, for Appellants. Charlene Ann Vaughan, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia; Joanna Irene Tabit, STEPTOE & JOHNSON, LLP, Charleston, West Virginia, for Appellees. **ON BRIEF:** Michelle E. Piziak, J. A. Curia III, STEPTOE & JOHNSON, LLP, Charleston, West Virginia, for Appellees Mingo County Board of Education and Dr. Steven L. Paine; Silas B. Taylor, Managing Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellee Dwight Dials. Braun A. Hamstead, HAMSTEAD & ASSOCIATES, LC, Martinsburg, West Virginia; James G. Dwyer, Professor of Law, MARSHALL WYTHE SCHOOL OF LAW, College of William & Mary, Williamsburg, Virginia, for Amici Supporting Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff Jennifer Workman filed this 42 U.S.C. § 1983 action against various West Virginia state and county officials, alleging that Defendants violated her constitutional rights in refusing to admit her daughter to public school without the immunizations required by state law. The district court granted summary judgment to Defendants. We now affirm.

I.

Workman is the mother of two school-aged children: M.W. and S.W. S.W. suffers from health problems that appeared around the time she began receiving vaccinations. In light of S.W.'s health problems, Workman chose not to vaccinate M.W.

Workman's decision not to allow vaccination of M.W. ran afoul of West Virginia law, which provides that no child shall be admitted to any of the schools of the state until the child has been immunized for diphtheria, polio, rubeola, rubella, tetanus, and whooping cough. W. Va. Code § 16-3-4. However, Workman sought to take advantage of an exception under the statute, which exempts a person who presents a certificate from a reputable physician showing that immunization for these diseases "is impossible or improper or other sufficient reason why such immunizations have not been done." Id. Thus, in an effort to enroll M.W. in the Mingo County, West Virginia, school

3

system without the required immunizations, Workman obtained a Permanent Medical Exemption ("the certificate") from Dr. John MacCallum, a child psychiatrist.

Dr. MacCallum recommended against vaccinating M.W. due to S.W.'s condition. Mingo County Health Officer, Dr. Manolo Tampoya approved the certificate and indicated that it satisfied the requirements for M.W. to attend school in Mingo County. M.W. attended the pre-kindergarten program at Lenore Grade School in Lenore, West Virginia for approximately one month in September 2007.

On September 21, 2007, the Superintendant of Mingo County Schools, Defendant Dwight Dials, sent a letter to Dr. Cathy Slemp, the acting head of the West Virginia Department of Health and Human Resources, stating that a school nurse had challenged Workman's certificate. Dr. Slemp responded by letter dated October 3, 2007, recommending Workman's request for medical exemption be denied. On October 12, 2007, Rita Ward, the Mingo County Pre-K Contact, sent Workman a letter notifying her that "as of October 12, 2007 [M.W.] will no longer be attending the Preschool Head Start Program at Lenore Pre-k-8 School in Mingo County."

M.W. did not attend school again until 2008, when she was admitted into a Head Start Program that accepted Dr. MacCallum's certificate. However, when M.W. aged out of that program, Mingo

4

County Schools would not admit her; accordingly, Workman home-schooled M.W.

Workman brought suit individually and as parent and guardian of her minor child, M.W. She filed an amended complaint on May 11, 2009 against the Mingo County Board of Education; Dr. Steven L. Paine, State Superintendant of Schools; Dwight Dials, Superintendant of Mingo County Schools; and the West Virginia Department of Health and Human Resources ("Defendants").

In her complaint, Workman raised constitutional and statutory claims, and sought a declaratory judgment, injunctive relief, and damages. Specifically, she alleged that Defendants' denial of her application for a medical exemption violated her First Amendment rights. She further alleged that Defendants' denial of her application for a medical exemption constituted a denial of Equal Protection and Due Process. In addition, Workman alleged that Defendants violated West Virginia Code Section 16-3-4 by refusing to accept Dr. MacCallum's certificate.

In a memorandum opinion and order of November 3, 2009, the district court determined that the Mingo County Board of Education and the West Virginia Department of Health and Human Services were entitled to Eleventh Amendment immunity from Workman's claims. The district court further concluded that

Workman's constitutional claims lacked merit. Finally, the district court ruled that, after dismissing all federal claims, it lacked jurisdiction to hear Workman's remaining state law claim for injunctive relief and it could discern no statutory basis for a damage claim. The district court therefore granted Defendants summary judgment. Workman appeals.

## II.

We first address Workman's argument that this case presents issues of material fact precluding summary judgment. Summary judgment is appropriate only where there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Workman argues that this case presents two material issues of fact: (1) whether Defendants acted "properly" in overturning Workman's medical exemption pursuant to state law; and (2) whether Workman's religious beliefs are sincere and genuine.

Workman frames the first issue as "whether or not the Mingo County Board of Education, Superintendent Dials, and State Superintendent Dr. Paine's rejection of the medical exemption was legal." Brief of Appellant at 14 (emphasis added). The district court ruled that it lacked jurisdiction to hear Workman's state law claim for injunctive relief and saw no indication that state law provided a cause of action for

6

damages. Workman does not explain how such purely legal determinations raised any triable issue of fact. Accordingly, we hold that the district court did not err in ruling that this issue did not preclude summary judgment. See United States v. West Virginia, 339 F.3d 212, 214 (4th Cir. 2003) ("Because this dispute ultimately turns entirely on a question of statutory interpretation, the district court properly proceeded to resolve the case on summary judgment.").

Regarding the second issue, the district court stated: "Since it is not necessary for me to resolve this issue, I decline the opportunity to evaluate the nature of Ms. Workman's beliefs." Indeed, the district court appears to have assumed the sincerity of Workman's religious beliefs but ruled that those "beliefs do not exempt her from complying with West Virginia's mandatory immunization program." Because a different resolution of this issue would not change the outcome of the case, it, too, did not preclude summary judgment. See JKC Holding Co. LLC v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation.").

In sum, the district court did not err in finding that no genuine issues of material fact precluded summary judgment.

III.

Workman next argues that West Virginia's mandatory immunization program violates her right to the free exercise of her religion. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The First Amendment has been made applicable to the states by incorporation into the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

Preliminarily, we note that the parties disagree about the applicable level of scrutiny. Workman argues that the laws requiring vaccination substantially burden the free exercise of her religion and therefore merit strict scrutiny. Defendants reply that the Supreme Court in Employment Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872 (1990), abandoned the compelling interest test, and that the statute should be upheld under rational basis review. Workman counters that Smith preserved an exception for education-related laws that burden religion. We observe that there is a circuit split over the validity of this "hybrid-rights" exception. See Combs v. Homer-Center School Dist., 540 F.3d 231, 244-47 (3rd Cir. 2008) (discussing circuit split and concluding exception was dicta). However, we do not need to decide this issue here because, even assuming for the sake of argument that strict scrutiny applies,

8

prior decisions from the Supreme Court guide us to conclude that West Virginia's vaccination laws withstand such scrutiny.

Over a century ago, in Jacobson v. Massachusetts, 197 U.S. 11 (1905), the Supreme Court considered the constitutionality of a statute that authorized a municipal board of health to require and enforce vaccination. Id. at 12. Proceeding under the statute, the board of health of Cambridge, Massachusetts, in response to an epidemic, adopted a regulation requiring its inhabitants to be vaccinated against smallpox. Id. Upon review, the Supreme Court held that the legislation represented a valid exercise of the state's police power, concluding "we do not perceive that this legislation has invaded any right secured by the Federal Constitution." Id. at 38 (emphasis added).

In Prince v. Massachusetts, 321 U.S. 158 (1944), the Supreme Court considered a parent's challenge to a child labor regulation on the basis of the Free Exercise Clause. Id. at 164. The Court explained that the state's "authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds." Id. at 166 (footnote omitted). The Court concluded that "[t]he right to practice religion freely does not include liberty to expose the

9

community or the child to communicable disease or the latter to ill health or death." Id. at 166-67.

In this appeal, Workman argues that Jacobson dealt only with the outbreak of an epidemic, and in any event should be overruled as it "set forth an unconstitutional holding." Brief of Appellant at 11. Workman's attempt to confine Jacobson to its facts is unavailing. As noted by one district court, "[t]he Supreme Court did not limit its holding in Jacobson to diseases presenting a clear and present danger." Boone v. Boozman, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002) (footnote omitted). Additionally, we reject Workman's request that we overrule Jacobson because we are bound by the precedents of our Supreme Court. Hutto v. Davis, 454 U.S. 370, 375 (1982) (per curiam) ("[A] precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.")

Workman also argues that because West Virginia law requires vaccination against diseases that are not very prevalent, no compelling state interest can exist. On the contrary, the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest.

In sum, following the reasoning of Jacobson and Prince, we conclude that the West Virginia statute requiring vaccinations as a condition of admission to school does not

10

unconstitutionally infringe Workman's right to free exercise. This conclusion is buttressed by the opinions of numerous federal and state courts that have reached similar conclusions in comparable cases. See, e.g., McCarthy v. Boozman, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) ("The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children."); Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F. Supp. 81, 88 (E.D.N.Y. 1987) ("[I]t has been settled law for many years that claims of religious freedom must give way in the face of the compelling interest of society in fighting the spread of contagious diseases through mandatory inoculation programs."); Davis v. State, 294 Md. 370, 379 n.8, 451 A.2d 107, 112 n.8 (Md. 1982) ("Maryland's compulsory immunization program clearly furthers the important governmental objective of eliminating and preventing certain communicable diseases."); Cude v. State, 237 Ark. 927, 932, 377 S.W.2d 816, 819 (Ark. 1964) ("According to the great weight of authority, it is within the police power of the State to require that school children be vaccinated against smallpox, and that such requirement does not violate the constitutional rights of anyone, on religious grounds or otherwise.").

IV.

Workman next argues that West Virginia's immunization requirement violates her right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, Workman's equal protection claim challenges the West Virginia statute as-applied and facially.

Regarding her as-applied challenge, Workman argues that the school system discriminated against her when Defendant Dials inquired into the validity of her exemption. The district court found, however, that Workman presented "no evidence of unequal treatment resulting from intentional or purposeful discrimination to support her claim." Indeed, Dials submitted an affidavit in which he stated that "we had never dealt with a request for a medical exemption during my tenure as Superintendant . . . ." Although Workman asserts that Dials and Paine used the statute and accompanying regulations improperly,

12

she points to no evidence of unequal treatment, and we see none. Consequently, the district court did not err in ruling Workman's as-applied challenge was without merit.  See Hanton v. Gilbert, 36 F.3d 4, 8 (4th Cir. 1994) (rejecting equal protection challenge when record revealed no evidence of discrimination).

Regarding her facial challenge, Workman notes that the statute does not provide an exemption for those with sincere religious beliefs contrary to vaccination.  She argues that the statute therefore discriminates on the basis of religion.  The district court ruled that, although a state may provide a religious exemption to mandatory vaccination, it need not do so.

The Supreme Court held as much in Zucht v. King, 260 U.S. 174 (1922), where it considered an equal protection and due process challenge to ordinances in San Antonio, Texas, that prohibited a child from attending school without a certificate of vaccination.  Id. at 175.  The Court stated that Jacobson "settled that it is within the police power of a State to provide for compulsory vaccination."  Id. at 176.  "A long line of decisions by this court . . . also settled that in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the equal protection clause merely because it is not all-embracing." Id. at 176-77.

13

Further, in Prince, a mother argued that her religion made the street her church and that denying her child access to the street to sell religious magazines violated her right to equal protection. 321 U.S. at 170. The Supreme Court explained that the public highways do not become religious property merely by the assertion of a religious person. Id. at 170-71. "And there is no denial of equal protection in excluding [Jehovah's Witnesses'] children from doing [on the streets] what no other children may do." Id. at 171.

Here, Workman does not explain how the statute at issue is facially discriminatory; indeed, her complaint is not that it targets a particular religious belief but that it provides no exception from general coverage for hers.[1] Following the Supreme Court's decisions in Zucht and Prince, we reject Workman's contention that the statute is facially invalid under the Equal Protection Clause.

---

[1] Several courts have declared unconstitutional religious exemptions from mandatory vaccination statutes. See, e.g., McCarthy, 212 F. Supp. 2d at 948-49 (invalidating religious exemption from Arkansas compulsory immunization statute); Brown v. Stone, 378 So. 2d 218, 223 (Miss. 1979) (invalidating religious exemption from Mississippi compulsory immunization statute).

14

V.

Workman next argues that denying her a religious exemption from the mandatory vaccination statute violates her substantive due process right to do what she reasonably believes is best for her child. Workman asserts that, because the statute infringes upon a fundamental right it must withstand strict scrutiny. She contends that the statute fails strict scrutiny because West Virginia has no compelling interest to justify vaccinating M.W.

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksburg, 521 U.S. 702, 720 (1997). To determine whether an asserted right is a fundamental right subject to strict scrutiny under the Due Process Clause, a court must (1) consider whether the asserted right is deeply rooted in the Nation's history and tradition; and (2) require a careful description of the asserted liberty interest. Id. at 720-21. Where a fundamental right is not implicated, the state law need only be rationally related to a legitimate government interest. Id. at 728.

As in Boone, "the question presented by the facts of this case is whether the special protection of the Due Process Clause includes a parent's right to refuse to have her child immunized before attending public or private school where immunization is a precondition to attending school." Boone, 217 F. Supp. 2d at

15

956 (footnote omitted).  We agree with other courts that have considered this question in holding that Workman has no such fundamental right.  See Zucht, 260 U.S. at 176-77; Boone, 217 F. Supp. 2d at 956; Bd. of Educ. of Mountain Lakes v. Maas, 56 N.J. Super. 245, 264, 152 A. 2d 394, 404 (N.J. Super. Ct. App. Div. 1959).

Indeed, the Supreme Court has consistently recognized that a state may constitutionally require school children to be immunized.  See Prince, 321 U.S. at 166-67; Zucht, 260 U.S. at 176; cf. Jacobson, 197 U.S. at 31-32 (noting that "the principle of vaccination as a means to prevent the spread of [disease] has been enforced in many States by statutes making the vaccination of children a condition to their right to enter or remain in public schools.").  This is not surprising given "the compelling interest of society in fighting the spread of contagious diseases through mandatory inoculation programs."  Sherr, 672 F. Supp. at 88.  Accordingly, we conclude that Workman has failed to demonstrate that the statute violates her Due Process rights.

VI.

Workman also argues that the district court erred in ruling that certain Defendants were protected by the Eleventh Amendment.  The District court ruled that only Defendants Mingo County Board of Education and the West Virginia Department of

16

Health and Human Resources were entitled to Eleventh Amendment immunity. "While we ordinarily would decide an immunity claim before reaching the merits of the underlying claim, when the complaint alleges no claim against which immunity would attach, we need not decide the immunity issue." Jackson v. Long, 102 F.3d 722, 731 (4th Cir. 1996) (citation omitted). Because Workman's constitutional claims against all Defendants fail, we need not determine whether the district court erred in applying Eleventh Amendment immunity to some of them.

VII.

Finally, Workman argues that subject matter jurisdiction exists over her state law claims. The district court ruled that, after dismissing all of Workman's federal claims, it lacked jurisdiction to hear her state law claim for injunctive relief. The district court also saw no indication that West Virginia law permits a private cause of action for damages against Defendants Paine and Dials.

Workman contends that the district court "can retain jurisdiction over [state law claims] even if it dismisses the federal claims." Brief of Appellant at 35. In general, this is a correct statement of supplemental jurisdiction. See 28 U.S.C. § 1367; but see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (holding Eleventh Amendment prohibits

17

federal courts from instructing state officials on how to conform their conduct to state law). Yet "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) And "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). There is no indication that the district court abused its discretion in dismissing Workman's state law claims.[2]


                              VIII.

In sum, we hold that the district court did not err in awarding summary judgment where there were no genuine issues of material fact. Workman's constitutional challenges to the West Virginia statute requiring mandatory vaccination as a condition of attending school are without merit. Finally, the district

_____

[2] In her reply brief, Workman makes additional arguments regarding the district court's ruling on her state law claims. Because Workman failed to raise those arguments in her opening brief, we consider the arguments waived. Fed. R. App. P. 28(a)(9)(A); Yousefi v. U.S. I.N.S., 260 F.3d 318, 326 (4th Cir. 2001) (per curiam).

18

court did not abuse its discretion in declining to exercise jurisdiction over Workman's remaining state law claims.

AFFIRMED